**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GLITCH PRODUCTIONS PTY LTD,

                  Plaintiff,

    v.

TARTIKAILY,

                  Defendant.

Case No. 24-cv-05804

**Judge Lindsay C. Jenkins**

**FINAL JUDGMENT ORDER**

This action having been commenced by Plaintiff Glitch Productions Pty Ltd ("Glitch" or "Plaintiff") against Defendant Tartikaily (the "Seller Alias") and Plaintiff having moved for entry of Default and Default Judgment against the Seller Alias (the "Defaulting Defendant");

This Court having entered upon a showing by Plaintiff, a temporary restraining order and preliminary injunction against the Defaulting Defendant which included an asset restraining order;

Plaintiff having properly completed service of process on the Defaulting Defendant, the combination of providing notice via electronic publication and e-mail, along with any notice that the Defaulting Defendant received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendant of the pendency of the action and affording it the opportunity to answer and present its objections; and

Defaulting Defendant has failed to answer the Complaint or otherwise plead, and the time for answering the Complaint has expired;

This Court further finds that it has personal jurisdiction over Defaulting Defendant since Defaulting Defendant directly targets its business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using the Seller

1

Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars, and has sold products bearing unauthorized copies of Glitch's federally registered copyrighted works, including the distinctive characters embodied therein ("MD Copyrighted Works") and using infringing and counterfeit versions of Glitch's federally registered trademark ("MD Trademark") (herein "Unauthorized Products") to Illinois residents.

A list of the MD Copyrighted Works is below.

| U.S. Copyright Reg. No. | Work Title | Issue Date |
|---|---|---|
| VA0002392949 | Cyn. | February 15, 2023 |
| VA0002392950 | J. | February 15, 2023 |
| VA0002392951 | N. | February 15, 2023 |
| VA0002392952 | Uzi. | February 15, 2023 |
| VA0002392953 | V. | February 15, 2023 |
| VA0002392355 | Murder Drones logo. | February 15, 2023 |

The MD Trademark is included in the chart below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 7,082,519 | MURDER DRONES | Jun. 20, 2023 | For: Clothing, namely, shorts, pants, coats, dresses, skirts and socks; footwear; headwear; t-shirts; printed t-shirts; shirts; bandanas, namely, neckerchiefs; shorts; hooded sweatshirts; jumpers, namely, pullovers; jumpers in the nature of sweaters; singlets; sweatbands; wristbands as clothing; hats in class 025.<br><br>For: Action toys, namely, action figure toys; children's toys, namely, stuffed toys; costumes for toys, namely, doll costumes; cuddly toys, namely, plush dolls; electronic children's multiple activity toys; molded plastic toy figurines; scale model toy figures; toy models; plastic toys, namely, toy figures; plush toys; plush |

2

| | | | stuffed toys; scale model kits; toys, namely, dolls; electronic games apparatus adapted for use with an external display screen or monitor; dice games; arcade game machines; gaming machines; games, namely, arcade game machines, action target games, board games and card games; electronic games for teaching children; party games; portable gaming devices, namely, portable video game consoles; trading cards for games; dolls; plush dolls in class 028.<br><br>For: Arranging of entertainment, namely, arranging and conducting social entertainment events; entertainment, namely, live show performances featuring video animation; fan club services for entertainment; live entertainment, namely, live audio performances by actors; live entertainment production services, namely, live audio performances by actor; organisation of competitions, namely, entertainment and educational services in the nature of competitions in the field of entertainment, education, culture, sports, and other non-business and non-commercial fields; arranging of contests; organisation of entertainment events in the nature of live musical performances; production of audio entertainment, namely, production of audio recordings; production of video podcasts; production of live entertainment, namely, production of television shows, plays; provision of online non-downloadable audio and video entertainment in the nature of visual and audio recordings |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | featuring animated content via electronic or digital transmission; provision of online non-downloadable audio and video entertainment in the nature of visual and audio recordings featuring animated entertainment; television entertainment in the nature of ongoing television programs in the field of variety; video entertainment services, namely, providing a web site featuring video presentations featuring animations; providing online information in the field of entertainment; providing online videos, not downloadable, in the field of animations; film production services, other than advertising films; production of animated cartoons; providing online electronic publications, not downloadable, namely, newsletters in the field of animation entertainment; electronic publication of information on a wide range of topics, including online and over a global computer network, namely, publishing of electronic publications; publishing of electronic publications; screenplay writing; production of webcasts, other than advertising, namely, providing webcasts in the field of animation entertainment; online publication of journals or diaries consisting of weblog and blog services in the nature of online journals, namely, blogs featuring animation entertainment in class 041. |

4

This Court further finds that Defaulting Defendant is liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and copyright infringement (17 U.S.C. §§ 106 and 501, *et seq.*).

It is hereby ordered that Plaintiff's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendant is deemed in default, and that this Final Judgment is entered against Defaulting Defendant.

It is further ordered that:

1.  Defaulting Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with it be permanently enjoined and restrained from:

    a.  using the MD Trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not Glitch's product or not authorized by Glitch to be sold in connection with the MD Trademark;

    b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the MD Copyrighted Works in any manner without the express authorization of Glitch;

    c.  passing off, inducing, or enabling others to sell or pass off any product as Glitch's genuine product or any other product produced by Glitch, that is not Glitch's or not produced under the authorization, control or supervision of Glitch and approved by Glitch for sale under the MD Trademark and/or bearing the MD Copyrighted Works;

    d.  committing any acts calculated to cause consumers to believe that Defaulting Defendant's products are those sold under the authorization, control, or supervision of Glitch, or are sponsored by, approved by, or otherwise connected with Glitch;

e.  further infringing the MD Trademark and/or the MD Copyrighted Works and damaging Glitch's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Glitch, nor authorized by Glitch to be sold or offered for sale, and which bear any of the MD Trademark, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the MD Copyrighted Works.

2.  Upon Glitch's request, any third party with actual notice of this Order who is providing services for Defaulting Defendant, or in connection with the Seller Alias, including, without limitation, any online marketplace platforms such as Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), DHGate.com ("DHGate"), eBay Inc. ("eBay"), Redbubble Limited ("Redbubble"), TP Apparel LLC ("Teepublic"), and Walmart, Inc. ("Walmart"), (collectively, the "Third-Party Providers"), shall, within seven (7) calendar days of receipt of such notice, disable and cease displaying any advertisements used by or associated with Defaulting Defendant in connection with the sale of counterfeit and infringing goods using the MD Trademarks and/or which bear unauthorized copies of the MD Copyrighted Works.

3.  Pursuant to 15 U.S.C. § 1117(c)(2), MD is awarded statutory damages from Defaulting Defendant in the amount of seventy-five thousand dollars ($75,000) for willful use of the MD Trademark in connection with the sale of products through at least the Defaulting Defendant's Seller Alias.

6

4. Pursuant to 17 U.S.C. § 504(c)(2), Glitch is awarded statutory damages from Defaulting Defendant in the amount of seventy-five thousand dollars ($75,000) for willful copyright infringement of the MD Copyrighted Works.

5. Plaintiff may serve this Order on Third-Party Providers, including Alibaba, AliExpress, Alipay, Amazon, Ant Financial Services Group ("Ant Financial"), DHgate, eBay, PayPal, Inc. ("PayPal"), Payoneer Global, Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong"), Stripe, Inc. ("Stripe"), Redbubble, Teepublic, and Walmart, by e-mail delivery.

6. Any Third-Party Providers holding funds for Defaulting Defendant, including AliExpress, Alipay, Amazon, Ant Financial, DHgate, eBay, PayPal, Payoneer, PingPong, Redbubble, Stripe, Teepublic, and Walmart, shall, within seven (7) calendar days of receipt of this Order, permanently restrain and enjoin any financial accounts connected to Defaulting Defendant's Seller Alias from transferring or disposing of any funds, up to the above identified statutory damages award, or other of Defaulting Defendant's assets.

7. All monies, up to the above identified statutory damages award, in Defaulting Defendant's financial accounts, including monies held by Third-Party Providers such as including AliExpress, Alipay, Amazon, Ant Financial, DHgate, eBay, PayPal, Payoneer, PingPong, Redbubble, Stripe, Teepublic, and Walmart, are hereby released to Plaintiff as partial payment of the above-identified damages, and Third-Party Providers, including AliExpress, Alipay, Amazon, Ant Financial, DHgate, eBay, PayPal, Payoneer, PingPong, Redbubble, Stripe, Teepublic, and Walmart, are ordered to release to Plaintiff the amounts from Defaulting Defendant's financial accounts within seven (7) calendar days of receipt of this Order.

8.  Until Glitch has recovered full payment of monies owed to it by the Defaulting Defendant, Glitch shall have the ongoing authority to serve this Order on Third-Party Providers, including AliExpress, Alipay, Amazon, Ant Financial, DHgate, eBay, PayPal, Payoneer, PingPong, Redbubble, Stripe, Teepublic, and Walmart, in the event that any new financial accounts controlled or operated by Defaulting Defendant are identified. Upon receipt of this Order, Third-Party Providers, including AliExpress, Alipay, Amazon, Ant Financial, DHgate, eBay, PayPal, Payoneer, PingPong, Redbubble, Stripe, Teepublic, and Walmart, shall within seven (7) calendar days:

    a.  locate all accounts and funds connected to Defaulting Defendant's Seller Alias, including, but not limited to, any financial accounts connected to the information listed in Schedule A hereto, the e-mail addresses identified in Exhibit 3 to the Declaration of Paul Varley, and any e-mail addresses provided for the Defaulting Defendant by third parties;

    b.  restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendant's assets; and

    c.  release all monies, up to the above identified statutory damages award, restrained in Defaulting Defendant's financial accounts to Glitch as partial payment of the above identified damages within seven (7) calendar days of receipt of this Order.

9.      In the event that Glitch identifies any additional online marketplace accounts or financial accounts owned by Defaulting Defendant, Glitch may send notice of any supplemental proceeding, including a citation to discover assets, to Defaulting Defendant by e-mail at the e-mail addresses identified in Exhibit 3 to the Declaration of Paul Varley and any e-mail addresses provided for Defaulting Defendant by third parties.

_____
Lindsay C. Jenkins
United States District Judge

**October 31, 2024**

9